N/S/1

FILED

2022 AUG -5 PM 2: 12

LERK U.S DISTRICT COURT
CENTRAL DIST. OF CAL.
LOS ANGELES

BY: ___

Neway Mengistu
6207 South Budlong Avenue
Los Angeles, CA 90044
Telephone Number: (323) 988-5688
Nmengistu1@aol.com

Plaintiff In Propria Persona

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NEWAY MENGISTU, an individual,

    Plaintiff,

    vs.

HOUSING AUTHORITY OF THE CITY
OF LOS ANGELES, a State of California
entity; and others to be joined under Rule
19 of the Federal Rules of Civil Procedure,

    Defendants.

Case No.:

2:22-cv-05512-MEMF(JC)

COMPLAINT FOR DAMAGES AS
A RESULT OF DISCRIMINATORY
HOUSING PRACTICES DIRECTED
AT PLAINTIFF IN VIOLATION OF
FEDERAL AND STATE FAIR
HOUSING DISABILITY LAWS

PLAINTIFF DEMAND JURY TRIAL

COME NOW Plaintiff NEWAY MENGISTU, an individual (hereinafter known as "Plaintiff"), and pursuant to Rule 8(a) of the Federal Rules of Civil Procedure set forth the following allegations in support of his claims for relief against Defendants in this action:

## I.    JURISDICTION AND VENUE

1. Plaintiff brings this action to enforce the provisions of the State of California and federal fair housing and disabilities laws, including but not limited to the

1

provisions of Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 et seq.; Americans with Disabilities Act, 42 U.S.C. §§ 12131, et seq., ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., ("Section 504"); laws and statutes of the State of California, especially Civil Code § 51, et seq. ("The Unruh Civil Rights Act"); and California Government Code § 12900, et seq., commonly known as the California Fair Employment and Housing Act ("FEHA").

2.     This Court has jurisdiction over this action under the provisions of 28 U.S.C. § 1331, 1343 and 1345 and 42 U.S.C. §§ 3601-3619. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because the claims are related to Plaintiff's federal claims and arise out of a common nucleus of operative facts. Plaintiff's state and federal claims form part of the same or similar case or controversy under Article III of the constitution of the United States of America.

3.     The venue of this action is properly in the United States District Court for the Central District of California pursuant to 42 U.S.C. §§ 1391(b) as all of the events or omissions giving rise to these claims occurred in this judicial district and within the County of Los Angeles, State of California.

4.     Plaintiff seeks monetary, declaratory, and injunctive relief as well as reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(1) and (2) and Cal. Govt. Code § 12989.2, for the housing discrimination based on Defendants' continuous and ongoing denial of Plaintiff's requests for reasonable accommodations and program access in public housing, in violation of federal and state of California fair housing laws.

2

## II. PARTIES

5.      Plaintiff is and has at all times herein mentioned been an American citizen who resides in the City of Los Angeles in the State of California.

6.      For purposes of the State of California and federal fair housing, disability, and civil rights laws, Plaintiff is a competent adult male who suffers from significant respiratory abnormalities, muscular atrophy, severe orthostatic hypotension, physical and psychological disability which impairs his ability to walk, work, breathe, performing manual tasks, or care for himself. Plaintiff uses an electric wheelchair to assist with his mobility and requires care of a government provider caregiver/aide.

7.      Plaintiff has been adjudged disabled by the United States Social Security Administration and receives disability insurance benefits and supplemental security income (SSI).

8.      Plaintiff is a disabled or handicapped person as defined under the federal Fair Housing Amendments Act (42 U.S.C. §§ 3601-3619); the California Fair Employment and Housing Act (Cal. Gov. Code § 12955 et seq.); the Unruh Civil Rights Act (Cal. Civ. Code § 51); and the Disabled Persons Act (Cal. Civ. Code § 54.1). Plaintiff is also a "qualified person with a disability" and a person with a disability within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B).

3

9. Based upon information and belief Plaintiff alleges that Defendant the Housing Authority of the City of Los Angeles ("HACLA") is a State of California entity authorized to engage in or assist in the establishing, managing and operating public and subsidized housing in the City of Los Angeles.

10. Defendant HACLA operates the Housing Choice Voucher (popularly known as "Section 8") housing program for the City of Los Angeles. The Section 8 program provides site and tenant-based assistance to eligible low-income persons in privately owned rental housing. Under the Section 8 program, eligible tenants receive vouchers from Defendant that can be used in the private housing market to defray the cost of rent.

11. Defendant HACLA is a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, is a recipient of federal financial assistance within the meaning of Section 504 and operates and offers public housing units as "dwellings" for rental or sale within the meaning of the Fair Housing Act, 42 U.S.C. §3602(b) and under The Unruh Civil Rights Act and FEHA.

12. Plaintiff is informed and believes, and thereon alleges that at all times mentioned herein, each and every defendant and its agents, was the agent, servant, employee, co-conspirator, and/or representative of each and every other defendant and was, in doing the things complained of herein, acting within the course, scope and authority of that agency, service, employment, conspiracy, and/or representation, and each and every

4

defendant was acting within his/her actual or apparent authority with the full knowledge and consent of the other defendants.

13. Plaintiff is ignorant of the true names and capacities of certain parties who may later be identified as proper parties to this action and Plaintiff will pray leave of this court to amend this Complaint to allege their true names and capacities when ascertained pursuant to the provisions of Rule 19 of the Federal Rules of Civil Procedure.

## III. FACTUAL ALLEGATIONS

### A. Introduction

14. Defendants, acting individually or in concert, directly or through agents, have engaged in discrimination and retaliation against Plaintiff because of Plaintiff's disability during the ownership and operation of the subject public housing owned or operated by the Defendants.

15. Defendants' unlawful acts and conduct include, but not limited to, commission of the following discriminatory housing practices: a. Denying Plaintiff's requests for reasonable accommodations in Defendants' policies, practices, or services, when the accommodations were reasonably necessary to afford the disabled tenants equal opportunity to the use and enjoyment of a dwelling. 42 U.S.C. § 3604(f)(3)(B); b. Discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling based on disability 42

5

U.S.C. § 3604(f)(2); c. discriminating against Plaintiff because of his disability;d. Aiding, abetting, threatening, inciting, compelling, or coercing the doing of any of the acts or practices declared unlawful by the federal Fair Housing Act and the California Fair Employment and Housing Act, or attempting to do so; and e. Coercing, intimidating, threatening, or interfering with Plaintiff in the exercise or enjoyment of rights granted or protected Plaintiff under the Federal Fair Housing Amendments Act and California Fair Employment and Housing Act. 42 U.S.C. § 3617; 24 C.F.R. §100.400; and California Government Code §12955(g)

16.    Defendants negligently failed to hire, train, supervise, and discipline its agents and employees, and themselves, in order to conform to the operation of public housing to the standard of care for the operation of dwellings in the public housing industry.

17.    Based on information and belief, Plaintiff alleges that Defendants continue to engage in rental practices that discriminate against, and provide differential treatment, to individuals on account of their disabled status, so as to constitute a continuing violation of the ADA, Section 504, federal Fair Housing Act, and the State of California Fair Employment, and Housing Act.

18.    Plaintiff is an "aggrieved person" for purposes of Title VIII because Defendants' discriminatory housing practice caused him injury pursuant to 42 U.S.C. 3602; § 802(i)(1) and (2) and California Gov't Code § 12927, and Plaintiff has suffered severe

6

injuries and damages as a result of Defendants' unlawful conduct as fully set forth in this complaint.

19.    On April 7, 2010, Plaintiff signed a lease to reside at 521 South San Pedro Street, Los Angeles, California 90013, a Shelter-Plus Care HUD housing program specifically designated for homeless individuals with severe mental illness, administered by Defendant HACLA.

20.    In 2014, Plaintiff applied to transfer from HUD's Shelter-Plus Care to HUD's Section 8 Housing Choice Voucher Program.

21.    On May 2, 2014, Defendant HACLA issued to Plaintiff Neway Mengistu a 1-bedroom Section 8 Housing Choice Voucher.

22.    On September 23, 2014, Plaintiff completed Defendant HACLA's Reasonable Accommodation Questionnaire Form, S504-02, and submitted it to Defendant HACLA requesting a second bedroom to accommodate his live-in aide.

23.    On September 29, 2014, in support of Plaintiff's request for live-in aide as a reasonable accommodation, his primary care physician, Dr. Pawel Kaszubowski, completed a Certification of Need for Reasonable Accommodation (Form S504-03) and delivered it directly to Defendant HACLA in support of Plaintiff's reasonable accommodation request verifying that due to Plaintiff's disability and medical condition, Plaintiff requires a live-in aide to assist with his daily activities of cooking, cleaning and administration of the numerous psychotropic and physical medications he takes.

24.    On September 30, 2014, Defendant HACLA granted Plaintiff's request for an additional bedroom to house a live -in aide as a reasonable accommodation.

25.    In November 2016, after conducting criminal and other background checks on his live-in aide, as well securing a live-in aide Certification, Defendant HACLA approved Plaintiff's current live-in aide, Eyerus Adamu Zeleke.

7

26.     On November 10, 2014, Plaintiff completed Defendant HACLA's Reasonable Accommodation Questionnaire - Form S504-02 and submitted it to Defendant HACLA requesting that Defendant HACLA approve an extra room to store and use his medical equipment as a reasonable accommodation.

27.     In support of Plaintiff's request an extra room to house and use his medical equipment as a reasonable accommodation, his primary care physician, Dr. Pawel Kaszubowski, completed a Certification of Need for Reasonable Accommodation (Form S504-03) (November 10, 2014) and a 2-page supplemental medical certification (February 6, 2015).

28.     In addition, in support of Plaintiff's request an extra room to house and use his medical equipment as a reasonable accommodation, pulmonologist, Dr. Michael Gurevitch, completed a Certification of Need for Reasonable Accommodation (Form S504-03) (November 10, 2014) and a 2-page supplemental medical certification (February 5, 2015).

29.     On January 12 and February 11, 2015, in writing, Defendant HACLA issued denials of Plaintiff's reasonable accommodation request for an extra room to house and use his medical equipment.

30. Although Defendant HACLA approved Plaintiff's request for an additional bedroom to house a live-in aide, (See Paragraphs 23 – 24) above, they refused to issue a 2-bedroom voucher.

31. When Plaintiff persisted with his reasonable accommodation requests (a 2-bedroom voucher reflecting Defendant HACLA's approval of a second bedroom and his repeated requests for an extra room to house his live-in aide), on May 1, 2015, Defendant HACLA revoked the Section 8 Housing Choice Voucher they issued to him on May 2, 2014 (see Para. 20, 24).

DOCUMENT NAME (e.g., COMPLAINT FOR DAMAGES) - 8

32. With assistance of Counsel, on July 16, 2015, Plaintiff filed a federal suit (*Mengistu vs. Housing Authority of the City of Los Angeles, et. al. - Central District of California Case Number 2:15-cv-05427*).

33. On March 2, 2016, following a court-ordered mediation, a partial settlement agreement was reached between the parties. On March 29, 2016, Defendant HACLA issued to Plaintiff a 3-bedroom Housing Choice Voucher (a bedroom to house Plaintiff; a second bedroom to house his live-in aide as a reasonable accommodation; and a third bedroom to house his medical equipment as a reasonable accommodation).

34. However, the parties failed to reach an agreement regarding damages.

35. On December 20, 2018, a final Settlement Agreement was reached in which Defendant HACLA agreed to pay Plaintiff $25,000 and **agreed not to take any retaliatory action against Plaintiff because he engaged in protected activities per the Fair Housing Act**. Specifically, in relevant part, the December 20, 2018, Settlement Agreement and Release stated:

> 4. <u>**Section 8 Voucher Program**</u> **Subject to Sections 2 and 3 above.**
> a.  Mengistu's Section 8 Housing Choice Voucher Program is regulated pursuant to the provisions of 24 Code of Federal Regulations Part 982, and Mengistu's Section 8 benefits under any current Housing Assistance Payment (HAP) contract with respect to 6207 So. Budlong Ae, Los Angeles, shall not be adversely affected by this settlement to the extent Mengistu remains in compliance with the eligibility criteria.
> b.  Mengistu shall be entitled to continue utilizing all appropriate grievance procedures to resolving all disputes with HACLA during the term of the aforesaid HAP contract.
> c.  Mengistu shall remain eligible for Housing Choice Voucher Program Housing Assistance, provided he is in compliance with all provisions of the lease and HACLA rules and regulations for the Housing Choice Voucher Program.

36. Plaintiff's attorney's fees in the federal case was $294, 389. However, per the December 20, 2018, SAR, the parties agreed, after a regular motion, for the district court

9

to decide a low amount of $50,000 or a high amount of $100,000.

37. Plaintiff is aware that throughout the above-referenced litigation, Defendant HACLA was represented by outside Counsel. Plaintiff is unaware the attorney's fee for Defendant HACLA in the above referenced federal action.

38. Under the Section 8 HCV program, on June 1, 2017, Plaintiff signed a lease with a private landlord. Per HUD rules, the lease listed his LIA as occupant but not a lessee. Pursuant to HUD and HACLA's rules and regulations, as a reasonable accommodation to plaintiff, one bedroom was assigned for petitioner's LIA. And, as a reasonable accommodation, another room was assigned to store and use his medical necessary equipment.

39. On March 9, 2018, Plaintiff and his LIA appeared at Defendant HACLA's office for in-person interview re HUD-mandated annual reexamination interview (2018 annual reexamination application). Along his application, Plaintiff provided Defendant HACLA with a copy of the birth certificate and Social Security card for his daughter.

40. During the March 9, 2018, annual reexamination in-person interview, Defendant HACLA handed to Plaintiff and his LIA, "Certification for Existing Live-In Aide" (aka "HAPP-RE 36D"), and "Section 8 family obligation" Forms to complete. In the presence of Petitioner's Section 8 advisor, Plaintiff and his current LIA completed and signed the forms and handed it back to Plaintiff's Section 8 advisor.

41. In his March 9, 2018, annual reexamination application, Plaintiff completed and submitted "supplemental to application for federally assisted housing, in which he explicitly requested that Defendant HACLA contact his then Attorneys, Odion L. Okojie and David Iyalomhe (Plaintiff Neway Mengistu provided Defendant HACLA with Office address; telephone number; and, emails), for several reasons, including, "Assist With Recertification Process".

10

42. However, in a "SECOND AND FINAL NOTICE OF ANNUAL REVIEW", dated April 27, 2018, Defendant HACLA falsely claimed that Plaintiff and his live-in aide failed to appear at the March 9, 2018, Annual Review interview. Furthermore, in the notice, Defendant HACLA demanded that his LIA provide income verification and she must appear in-person and sign HUD-mandated forms (although, Federal Regulation prohibits including income of a Live-in Aide from household income). Furthermore, Defendant HACLA warned petitioner that he will lose his Section 8 benefits unless he appears at their office on May 11, 2018, with the documents identified in the April 27, 2018, Second and Final Notice. In subsequent email exchanges with his Section 8 advisor, Plaintiff repeatedly request that Defendant HACLA recheck their record, because Plaintiff and his LIA had completed the 2018 annual reexamination process during their March 9, 2018, office visit, to no avail. Plaintiff also attempted for Defendant HACLA to reconsider their demand that his LIA and he return to commence their 2018 annual reexamination process, because his mobility issues (wheelchair bound), would make it challenging to travel to Defendant HACLAs' office for a second time, to no avail.

43. Although, in his March 9, 2018, annual reexamination application, Plaintiff explicitly requested that Defendant HACLA contact his then attorneys to "Assist With Recertification Process", Defendant HACLA did not provide a copy of the April 27, 2018, "SECOND AND FINAL NOTICE OF ANNUAL REVIEW", or contacted Plaintiff's former attorneys.

44. On May 11, 2018, as soon as his LIA and petitioner arrived at Defendant HACLA's office, without any explanation or justification, out of the blue, under a threat of termination from the Section 8 Program, Defendant HACLA dictated the certification language  that his LIA was solely responsible for care of their then 3-month-old daughter. Once again, Plaintiff was asked to provide his State Identification card (although he

11

provided it during the March 9, 2018, visit), which he complied with. At the May 11, 2018, second in-person interview, contrary to what Defendant HACLA stated in their April 27, 2018, Second and Final Notice, Plaintiff's section 8 advisor conceded that he and his LIA did appear on 3/9/2018 and turned-in ALL required documents during the in-person interview.

45.     Although Plaintiff has filed annual reexamination application and submitted to Defendant HACLA in 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 20121 and 2022, the only occasion Defendant HACLA obtained Plaintiff's Credit Report was on  5/11/2018.

46.     In response to Plaintiff's March 9 and May 11, 2018, 2019 annual reexaminations, on May 29, 2018, Defendant HACLA issued their NOTICE OF CHANGE IN RENT AND HAP SUBSIDY, "in which they stated that, your family is composed of 3 persons" (Petitioner, his LIA, and their minor daughter born in 2018).

47.  In a "SECOND AND FINAL NOTICE OF ANNUAL REVIEW", dated March 8, 2019, Defendant HACLA informed Plaintiff that he failed to appear on 3-6-19 for his annual reexamination and advised him that he will lose his Section 8 benefits unless he appears at Defendant HACLA's office on 3-22-19.

48.     As in 2018 annual reexamination, although Plaintiff explicitly requested for Defendant HACLA to contact his former attorneys in the event there is any issue with the annual reexamination process (see para.43), Defendant HACLA never contacted Plaintiff's former attorneys (or provide Plaintiff's attorneys with the March 8, 2019, "SECOND AND FINAL NOTICE OF ANNUAL REVIEW").

49. In his April 9, 2019, annual reexamination application, Plaintiff completed and submitted "supplemental to application for federally assisted housing, in which he explicitly requested that Defendant HACLA contact his then Attorneys, Odion L. Okojie and David Iyalomhe (Plaintiff Neway Mengistu provided Defendant HACLA with Office

12

address; telephone number; and, emails), for several reasons, including, "Assist With Recertification Process".

50. In his April 9, 2019, annual reexamination application, in response to a question, "Has anyone receive any other income in the in the past 12 months?" Plaintiff responded in the affirmative. To a follow-up inquiry in the application, Plaintiff responded that the source of the income was "personal injury damages from the Housing Authority of the City of Los Angels pursuant to the December 20, 2018, settlement agreement and release." Plaintiff stated that the amount was $50,000.00.

51. During the April 10, 2019 annual reexamination in-person interview, Defendant HACLA handed to Plaintiff and his LIA, "Certification for Existing Live-In Aide" (aka "HAPP-RE 36D"), and "Section 8 family obligation" Forms to complete. In the presence of Petitioner's Section 8 advisor, Plaintiff and his current LIA completed and signed the forms and handed it back to Plaintiff's Section 8 advisor.

52. In response to Plaintiff's April 10, 2019, annual reexamination, on April 15, 2019, Defendant HACLA issued their NOTICE OF CHANGE IN RENT AND HAP SUBSIDY, in which they stated that," your family is composed of 3 persons" (Petitioner, his LIA, and their minor daughter born in 2018).

53.     In August 2019, Plaintiff's son was born. In compliance with the Section 8 family obligation to report immediately any changes in his family's income or composition, as soon the Social Security Administration issued to his son a Social Security Card, on August 26, 2019, he submitted a letter and a copy of his son's Social Security Card addressed to his Section 8 advisor by certified mail, in which he requested his newborn be added to the household. The certified mail was received by Defendant HACLA on August 29, 2019, at 1:17 PM. However, although it was mandatory for Defendant HACLA to conduct Interim Review, they refused to do so. Defendant HACLA also

13

refused to add Plaintiff's son to the household.

54. On March 11, 2020, at Defendant HACLA's office, Plaintiff and his Live-in aide attended an annual reexamination interview, in which Plaintiff's Section 8 advisor handed Plaintiff and his LIA, "Certification for Existing Live-In Aide" (aka "HAPP-RE 36D"), and "Section 8 family obligation" Forms to complete. In the presence of Plaintiff's Section 8 advisor, Plaintiff and his current LIA completed and signed the forms and handed it back to Plaintiff's Section 8 advisor.

55.    In response to the March 11, 2020 annual reexamination, on April 27, 2020, Defendant HACLA issued their NOTICE OF CHANGE IN RENT AND HAP SUBSIDY, in which they stated, Your family is composed of 1 person (Petitioner only). In addition, in the April 27, 2020, notice, Defendant HACLA informed Plaintiff that his share of the rent will increase from $102 to $524 per month effective 6/1/2020.

56.    Moreover, in response to the March 11, 2020, annual reexamination, on April 29, 2020, Defendant HACLA issued their NOTICE OF REVIEW DETERMINATION/DOWNSIZING BEDROOM. Specifically, Defendant HACLA's notice stated, "This is to notify you that on the basis of your recent annual reexamination, your family's voucher bedroom size will be downsized at the reexamination effective date of 6/01/2020 due to the following reasons:" Your current live-in aide is no longer eligible because she brings two additional children which would require more than 1 bedroom." Furthermore, in their April 29, 2020, notice, Defendant HACLA *stated:*

> "Beginning 6/1/2020 you will be responsible for the additional cost of the bedroom and the live-in aide will no longer be authorized to reside in the unit unless you re-verify the need for a live-in aide with a medical healthcare or service provider or you add the live-in aide to the household as a new family member."

14

57.    Moreover, in their April 29, 2020, notice, in which Defendant HACLA removed a bedroom designated for his LIA of five years as a reasonable accommodation, from his family's voucher bedroom size, Defendant HACLA denied Plaintiff access to HUD-mandated right to their administrative appeal process re denial of an extra bedroom to house his LIA as a reasonable accommodation.

58. The above-referenced April 27 and April 29, 2020, notices, were mailed by respondents to petitioner in an envelope post dated May 6, 2020, which he received on May 14, 2020. HUD and respondents' rules and regulations which requires a 30-day advance notice before increasing a tenant's monthly rent. Defendant HACLA's April 27, 2020, notice violated said rule. Moreover, respondents' rules and regulations require a 30-day advance notice to locate a new live-in-aide. Defendant HACLA violated their own rule by providing Plaintiff far less than 30 days advance notice to locate a new LIA.

59.    In a letter dated May 15 and May 21, 2020, Plaintiff specifically, and repeatedly requested access to HUD-mandated administrative appeals process regarding the April 27 and April 29, 2020, reasonable accommodation denials, which, to date, Defendant HACLA have continued to refuse access to their HUD-mandated grievance process.

60.    In his June 9, 2020, email correspondence, addressed to his Section 8 advisor, Isabell Gutierrez, as a reasonable accommodation, petitioner requested for his children to be added to his household. His written request to respondents did not make any reference to his live-in aide.

61.    In their June 22, 2020, NOTICE OF CHANGE IN RENT AND HAP SUBSIDY, Defendant HACLA stated: "Your family was composed of 3 persons." For the first time since he became Section 8 HCV program participant, Plaintiff received a NOTICE OF LEASE RIDER dated June 22, 2020, issued by Defendant HACLA.

15

Defendant HACLA NOTICE OF LEASE RIDER stated that the persons authorized to occupy the unit are: Plaintiff, his LIA and their daughter. Inexplicably, the lease rider was signed by the owner but was <u>undated</u>. On July 20, 2020, Plaintiff signed and dated the lease rider and returned it to the Defendant HACLA. Despite repeated requests, to date, Defendant HACLA have refused to provide Plaintiff with a copy of the owner signed and dated NOTICE OF LEASE RIDER they issued on June 22, 2020. The effective date for Defendant HACLA's June 22, 2020, notice was July 1, 2020.

62.    In their June 29, 2020, email correspondence, after he completed attached certification form within 14 days (MODIFIED INTERIM CERTFIED STATEMENT – RE-46 Modified), Defendant HACLA advised Petitioner that both his children will be added to his household.  In said June 29, 2020, email correspondence, without any justification or explanation, Defendant HACLA advised Plaintiff that his request for his biological children to be added to his family will necessitate the disqualification of his LIA, unless, within 14 days, petitioner provide r Defendant HACLA with any supporting documentation that his LIA of four years qualifies as his LIA.

63.    However, in their July 01, 2020, email correspondence, Defendant HACLA advised Plaintiff to disregard their June 29, 2020, email correspondence and to refrain from completing form RE-46 Modified, instead to complete a slew of other forms (submitted as attachments) to be completed by his LIA and Plaintiff.

64.  In their July 1, 2020, pending Interim Notice, Defendant listed the Forms that Plaintiff and his LIA must complete. The deadline to submit the listed forms was July 15, 2020.

65.    On July 15, 2020, via email, Plaintiff submitted to Defendant HACLA, forms completed by him and his LIA's (HUD-mandated live-in aide certifications (Section 8 Family Obligation; Form HAPP RE-36D – Certified Statement of a Live-In Aide; and, Form RE-36D – Certification By Live-In Aide).

16

66.    In its August 6, 2020, email correspondence, respondents advised petitioner that they approved his children as members of his family household. However, respondents stated that petitioner's LIA was disqualified as his LIA for the following reasons: "Ms. Zeleke's certification failed to disclaim financial responsibility for the household and there is no evidence to suggest that Ms. Zeleke has disclaimed responsibility to your children." In an accompanying reasonable accommodation denial request, notice, Defendant HACLA justified its denial by stating that granting the reasonable accommodation request for Plaintiff's LIA of four years, would result in "fundamental alternation" of the Section 8 program. Moreover, Defendant HACLA insisted that the live-in aide policy is applicable to other non-disabled family members.

67.    As a stand-alone attachment, respondents' August 6, 2020, notice of denial of reasonable accommodation request, effectively immediately, without any due process, respondents removed the extra bedroom designated for his LIA from the unit, that petitioner and his LIA occupied since June 1, 2017. Specifically, Respondents' August 6, 2020, denial notice, stated; "*This is to notify you of the denial of your request for a **live-in aide** as a reasonable accommodation.*"

68.    In said denial notice, petitioner was advised of his right to appeal said adverse decision to Angela N. Adams, Assistant Director of Section 8.

69.    In light of fact, on July 15, 2020, petitioner's LIA, completed/signed the two certifications provided to her by Respondents (Form HAPP RE-36D – Certified Statement of a Live-In Aide and Form RE-36D – Certification by Live-In Aide), See paras. 38 and 39 above, on August 10, 2020, petitioner requested for the evidence respondents relied upon to reject Petitioner's live-in aid certification? Respondent refused to respond to Petitioner's August 17, 2020, request for the evidence they relied upon to disqualify his LIA?

17

70. In light of fact, on July 15, 2020, Petitioner's LIA, completed/ signed the two certifications provided to her by respondents (Form HAPP RE-36D – Certified Statement of a Live-In Aide and Form RE-36D – Certification by Live-In Aide), See paras. 38 and 39, above, on August 17, 2020, petitioner requested for the evidence that respondents relied upon to reject petitioner's LIA certification? Respondents refused to respond to petitioner's August 17, 2020, written request for the evidence they relied upon to disqualify his LIA?

71. Similarly, on August 31, 2020, in email correspondence addressed to Angeles N. Adams, Assistant Director of Section 8, (Defendant HACLA's designated person to review any appeal of respondents' August 6, 2020, adverse decision), petitioner requested for the evidence Defendant HACLA relied upon to reject Plaintiff's said LIA's certifications? Defendant HACLA refused to respond to petitioner's August 31, 2020, request for the evidence they relied upon to disqualify his LIA. However, the Defendant HACLA deemed his August 31, 2020, request for said evidence, as an appeal of their August 6, 2020 denial of his reasonable accommodation request, and, in their September 1, 2020 letter, they denied petitioner's appeal.

72. Petitioner also repeatedly requested for the respondents' designated hearing officer, John King, to provide him with alleged evidence that respondents relied upon to reject petitioner's LIA's certifications, to no avail.

73. In a letter dated April 22, 2021, Defendant HACLA informed Plaintiff that he had 30 days file his final administrative appeal. However, on May 10, 2021, Defendant HACLA denied Plaintiff's appeal before the April 22, 2021, 30-day extension expired.

74. Since September 1, 2020, Defendant HACLA removed a bedroom assigned to Plaintiff's live-in aide of four years, without any due process.

75. Defendant HACLA stated that they disqualified his live-in aide of four years and removed a bedroom assigned to her without due process because of their objection that

18

Plaintiff allowed his children to reside in the subsidized unit.

76. Defendant HACLA disqualified his live-in aide of four years and removed a bedroom assigned to her without due process because of Plaintiff's national origin.

77. Defendant, repeatedly insisted that Plaintiff's live-in aide's income should be included in the household income.

78. This is an action for denial of reasonable accommodation, for discrimination, and harassment in housing brought pursuant to the provisions of Title VIII of the Civil Rights Act of 1968, as amended and set forth in Title 42 of the United States Code, § 3604, et seq., the California Government Code § 12955, et seq., commonly known as the California Fair Employment and Housing Act (FEHA); and California Civil Code § 51 (The Unruh Civil Rights Act).

79. Pursuant to the provisions of Title VIII of the Civil Rights Act of 1968, as amended, and as set forth in Title 42 of the United States Code, § 3604, Plaintiff may not be denied reasonable accommodation, denied the same benefits of full and equal accommodations, advantages, facilities, privileges, or services on account of Plaintiff's disability.

80. Defendants refused to make a reasonable accommodation to their rules, policies or practices when such accommodations was necessary to afford Plaintiff equal opportunity to use and enjoy the Subject Property.

81. Plaintiff believes and as such allege that on account of Plaintiff's disability, as well as for asserting his legal rights as described above, he was subjected to unlawful housing discrimination, as well as denying him the same and similar benefits terms and conditions in housing. As a result of their actions, Plaintiff has experienced and continues to experience severe physical and emotional pain and suffering including but not limited to: anxiety and panic attacks, feelings of depression, anger, hopelessness, and loss of housing opportunity.

19

## INJURIES TO PLAINTIFF

82.    Though Defendants knew or reasonably should have known that their conducts, acts and omissions stated in this complaint were unlawful and were causing severe injuries and damages to Plaintiff, Defendants failed to stop their unlawful actions but continued to recklessly disregard the protected rights of Plaintiff in violation of federal and State of California disability and fair housing laws.

83.    At all relevant times to this action, Defendants, through their above-referenced actions, coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed any right granted or protected by applicable disability and fair housing laws of the State of California (Cal.Gov't Code §129559(g)) and the Fair Housing Act, in violation of 42 U.S.C. § 3617.

84.    As a result of Defendants' unlawful conduct, Plaintiff suffered, are continuing to suffer, and will in the future suffer, great and irreparable loss and injury, including, but not limited to, irreversible damage to his ability to find affordable housing; loss of their housing - housing him, his live-in aide and storing and using his in-home exercises equipment; deprivation of the full use and enjoyment of his dwelling; violation of the covenant of quiet enjoyment; invasion of the private right of occupancy; violation of their civil rights; severe emotional distress, humiliation, embarrassment, and severe bodily injury including migraine headaches, stomach aches, sleep loss, appetite loss, inability to work, and other special and general damages according to proof.

85.    The discriminatory actions of the Defendants were intentional, willful, and taken in conscious, callous, reckless, deliberate or reckless disregard of the State of California and federally protected rights of Plaintiffs.

86.    An actual case or controversy exists between the parties regarding Defendants' duties under federal and California disability and fair housing laws. Accordingly,

20

Plaintiff is entitled to declaratory relief.

87.    Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief.

### FIRST CAUSE OF ACTION FOR VIOLATION OF RIGHTS UNDER TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968 AGAINST ALL OF THE DEFENDANTS

88.    Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs from above, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

89.    Pursuant to the provisions of Title VIII of the Civil Rights Act of 1968, as amended and set forth in Title 42 of the United States Code, § 3604, et seq., Plaintiff may not be denied reasonable accommodations in connection with his disability, Plaintiff was subjected to national origin discrimination -  or 42 U.S.C. §3604(b), Plaintiff was subjected to familial status discrimination - 42 U.S.C.  §3604(b),  nor can he be denied the same benefits of full and equal accommodations, advantages, facilities, privileges, or services or interfered with persons in the exercise or enjoyment of guaranteed rights as other individuals or participants or tenants of public housing in the City of Los Angeles or in the sale or rental of housing because of Plaintiff's disability or medical condition.

90..    Defendants' treatment of Plaintiff as described above and in refusing to grant Plaintiff's reasonable accommodation requests based on Plaintiff's disability and handicap, when such accommodations were necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling, violated applicable United States fair housing laws - 42 U.S.C. § 3604(f)(3)(B).

21

91.   Defendants knew and should have known that Plaintiff was a person with disabilities upon receipt of Plaintiff's requests for reasonable accommodation but Defendants failed to engage in a good faith interactive process to evaluate the requests and unduly delayed to consider and approve the requests and deliberately denied Plaintiff's requests.

92.   Plaintiff's requests for reasonable accommodation were reasonable and necessary to afford him equal access to a dwelling or equal housing opportunity in the City of Los Angeles and Defendants failed to engage in a good faith interactive process to evaluate Plaintiff's requests.

93.   Plaintiff's reasonable accommodation requests would not have imposed an undue administrative or financial burden on the Defendants and did not require a fundamental alteration in the nature of Defendants' programs or services.

94.   As a direct, legal and proximate result of the unlawful acts of all of the Defendants and each of them, Plaintiff was and continues to be injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe mental pain and anguish, humiliation, hardship and anxiety. These injuries will result in some permanent disability to Plaintiff.

95.   As a direct, legal and proximate result of the acts of all of the Defendants and each of them, as herein alleged, Plaintiff has incurred, and will incur, further medical and incidental expenses for the care and treatment of the injuries, the exact amount of which will be determined at the time of trial.

96.   The acts of all of the Defendants and each of them as herein alleged, were willful, wanton, malicious, oppressive and done with reckless disregard of Plaintiff's civil and housing rights and these ongoing unlawful acts and conduct justify the awarding of declaratory and injunctive relief, and damages including attorneys' fees and costs in favor of Plaintiff against the Defendants in this action pursuant to FHA, 42 U.S.C. § §

22

3613(c)(1) and (2).

## SECOND CAUSE OF ACTION FOR VIOLATION OF RIGHTS UNDER THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. §§ 12101, ET SEQ., AGAINST ALL OF THE DEFENDANTS

97. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs from above, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

98. Pursuant to the provisions of Title VII of the ADA Plaintiff, as a qualified person with disability who satisfies all essential eligibility requirements for the receipt of the services, programs, or activities of Defendant HACLA, shall not, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

99. The implementing regulations of the United States Department of Housing and Urban Development (HUD), 28 C.F.R. § 35.134, makes it unlawful to discriminate against person because that individual has opposed any act or practice made unlawful under the law, or because that person has made a complaint, testified, or assisted, or participated in any manner in an investigation, proceeding or hearing under the law.

100. Defendant HACLA is obligated to operate each program, service, or activity to ensure that "when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R.§§ 35.149; 35.151.

101. Defendants' treatment of Plaintiffs as described above and by excluding Plaintiff from participation in or denying him the benefits of Defendants' services, programs and activities; denying Plaintiff an opportunity to participate in or benefits from benefits and

23

services that are equal to, and effective as, those afforded others; in refusing to grant Plaintiff's reasonable accommodation requests and program access to Plaintiff and subjecting Plaintiff to discrimination and excluding him from participation in, and denying him the benefits of, Defendants' services, programs and activities because Defendants' facilities are inaccessible to or unusable by individual with disabilities; violate the ADA and pertinent regulations under 28 C.F.R. §§ 35.130; 35.149; 35.150; 35.151.

102.   Defendants continue to deny Plaintiff's requests for reasonable accommodation and access to their program and services in violation to the ADA.

103.   Plaintiff's requests for reasonable accommodation were reasonable and necessary to afford him equal access to housing in the City of Los Angeles and Defendants failed to engage in a good faith interactive process to evaluate Plaintiff's requests.

104..   The reasonable accommodation requests of Plaintiff would not have imposed an undue administrative or financial burden on the Defendants and did not require a fundamental alteration in the nature of Defendants' programs or services.

105.   As a direct, legal and proximate result of the unlawful acts of all of the Defendants and each of them, Plaintiff was and continues to be injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe mental pain and anguish, humiliation, hardship and anxiety. These injuries will result in some permanent disability to Plaintiff.

106.   As a direct, legal and proximate result of the acts of all of the Defendants and each of them, as herein alleged, Plaintiff has incurred, and will incur, further medical and incidental expenses for the care and treatment of the injuries, the exact amount of which will be determined at the time of trial.

107.   The acts of all of the Defendants and each of them as herein alleged, were willful, wanton, malicious, oppressive and done with reckless disregard of Plaintiff's civil and

24

housing rights and these ongoing unlawful acts and conduct justify the awarding of declaratory and injunctive relief, and damages including attorneys' fees and costs in favor of Plaintiff against the Defendants in this action pursuant to ADA, 42 U.S.C. § 12133.

## THIRD CAUSE OF ACTION FOR VIOLATION OF RIGHTS UNDER SECTION 504 OF THE REHABILITATION ACT AGAINST ALL OF THE DEFENDANTS

108.   Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs from above, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

109.   Pursuant to the provisions of Section 504 of the Rehabilitation Act of 1973, Plaintiff, as a qualified person with disability, shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ..." 29 U.S.C. § 794.

110.   At all relevant times to this action, Defendants are direct recipients of federal financial assistance under Section 504.

111.   At all relevant times to this action, Plaintiff is qualified to participate in the services, programs, or activities which Defendants provide to individuals pursuant to Section 504. 29 U.S.C. § 794(b).

112.   Defendants, especially Defendant HACLA and its agents and employees, have and continue to violate the pertinent provisions of Section 504 and implementing regulations by excluding Plaintiff from participating in, denying Plaintiff the benefits of, and subjecting Plaintiff based solely by reason of his disabilities to discrimination in the benefits and services of the public housing services and programs access in the City of

25

Los Angeles.

113. As a provider of public housing in the City of Los Angeles, Defendant HACLA has an affirmative duty under Section 504 to provide reasonable accommodation to qualified disabled persons like Plaintiff where such reasonable accommodation would not result in an undue administrative or financial burden. Defendants failed to provide such reasonable accommodation and program access to Plaintiff in violation of Section 504.

114   As a direct, legal and proximate result of the unlawful acts of all of the Defendants and each of them, Plaintiff was and continues to be injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe mental pain and anguish, humiliation, hardship and anxiety. These injuries will result in some permanent disability to Plaintiff.

115. As a direct, legal and proximate result of the acts of all of the Defendants and each of them, as herein alleged, Plaintiff has incurred, and will incur, further medical and incidental expenses for the care and treatment of the injuries, the exact amount of which will be determined at the time of trial.

116. The acts of all of the Defendants and each of them as herein alleged, were willful, wanton, malicious, oppressive and done with reckless disregard of Plaintiff's civil and housing rights and these ongoing unlawful acts and conduct justify the awarding of declaratory and injunctive relief, and damages including attorneys' fees and costs in favor of Plaintiff against the Defendants in this action pursuant to Section 504, 29 U.S.C. § 794(a).

**FOURTH CAUSE OF ACTION BY PLAINTIFF FOR DENIAL OF REASONABLE ACCOMMODATION IN VIOLATION OF RIGHTS UNDER CALIFORNIA'S FEHA (GOVT. CODE § 12955, et seq.) ON ACCOUNT OF PLAINTIFF'S DISABILITY AND MEDICAL CONDITION AGAINST ALL OF THE DEFENDANTS**

117. Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs from above, and by this reference incorporate said allegations as part of this CAUSE OF ACTION.

118. Pursuant to the provisions of California State Government Code § 12955, et seq., commonly known as the California Fair Employment and Housing Act (FEHA), Plaintiff may not be denied reasonable accommodation, or denied the same benefits of full and equal accommodations, advantages, facilities, privileges, or services or in the sale or rental of housing or otherwise make unavailable or deny a dwelling based on discrimination because of Plaintiff's disability.

119. Defendants' treatment of Plaintiff as described above and in refusing to grant Plaintiff's reasonable accommodation requests based on Plaintiff's disability, when such accommodations were necessary to afford Plaintiff equal opportunity to use and enjoy a dwelling, violated applicable California fair housing laws (FEHA) - Cal. Gov't Code § 12955, et seq.

120. Defendants knew and should have known that Plaintiff was a person with disabilities upon receipt of Plaintiff's requests for reasonable accommodation but Defendants failed to engage in a good faith interactive process to evaluate the requests and unduly delayed to consider and approve the requests and deliberately denied Plaintiff's requests.

121. Plaintiff's requests for reasonable accommodation were reasonable and necessary to afford him equal access to a dwelling or equal housing opportunity in the City of Los

27

Angeles and Defendants failed to engage in a good faith interactive process to evaluate Plaintiff's requests.

122.   Plaintiff's reasonable accommodation requests would not have imposed an undue administrative or financial burden on the Defendants and did not require a fundamental alteration in the nature of Defendants' programs or services.

123.   As a direct, legal and proximate result of the unlawful acts of all of the Defendants and each of them, Plaintiff was and continues to be injured in his health, strength, and activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe mental pain and anguish, humiliation, hardship and anxiety. These injuries will result in some permanent disability to Plaintiff.

124.   As a direct, legal and proximate result of the acts of all of the Defendants and each of them, as herein alleged, Plaintiff has incurred, and will incur, further medical and incidental expenses for the care and treatment of the injuries, the exact amount of which will be determined at the time of trial.

125.   The acts of all of the Defendants and each of them and their managing agents as herein alleged, were willful, wanton, malicious, oppressive and done with reckless disregard of Plaintiff's civil and housing rights and these ongoing unlawful acts and conduct justify the awarding of declaratory and injunctive relief, and damages including attorneys' fees and costs in favor of Plaintiff against the Defendants in this action pursuant to FEHA, Cal. Gov't Code § 12989.2.

### FIFTH CAUSE OF ACTION FOR VIOLATION OF RIGHTS UNDER THE PROVISIONS OF CALIFORNIA'S CIVIL CODE § 51, et seq., AGAINST ALL DEFENDANTS

126.   Plaintiff incorporates by this reference all of the allegations contained in the preceding paragraphs from above, and by this reference incorporate said allegations as

28

part of this CAUSE OF ACTION.

127.   Defendants' acts and omissions described herein constitute discriminatory practices in violation of Cal. Civil Code § 51, et seq.

128.   Pursuant to the Unruh Civil Rights Act, § 51(f), a violation of the ADA also constitutes a violation of the Section 51 of the Unruh Civil Rights Act.

129.   Defendant HACLA is a business establishment under the Unruh Civil Rights Act.

130.   Defendants' mistreatment of Plaintiff in denying Plaintiff's reasonable accommodation requests for services and program access, when such accommodations were necessary to afford him equal use and enjoyment of a dwelling in the City of Los Angeles is a violation of the Unruh Civil Rights Act. 131.       The foregoing acts and conduct of Defendants, especially Defendant HACLA and its agents and employees, violate and continue to violate Plaintiff's right to fair housing under the Unruh Civil Rights Act, in that Defendants discriminated against Plaintiff based on his disability in the operation of public housing in the City of Los Angeles, and for above set forth reasons, including the ADA, FHA and FEHA.

132.   The foregoing conduct of Defendants set forth herein constitutes a denial of full and equal access of reasonable accommodation in housing to Plaintiff comparable to the access that Defendants offer to others within the meaning of the Unruh Civil Rights Act, § 51, et seq.

133.   Defendants' unlawful acts, omissions and conduct set forth herein constitute intentional discrimination against persons with disabilities and flagrant violations of the Unruh Civil Rights Act, § 51, et seq., in that Plaintiff, a person with a disability has been and continued to be denied full and equal accommodations, advantages, facilities, privileges, and services provided to people without disabilities.

134.   As a direct, legal and proximate result of the unlawful acts of all of the Defendants and each of them, Plaintiff was and continues to be injured in his health, strength, and

29

activity, sustaining injury to his body, and shock and injury to his nervous system and person, including injuries of severe mental pain and anguish, humiliation, hardship and anxiety. These injuries will result in some permanent disability to Plaintiff.

135.  As a direct, legal and proximate result of the acts of all of the Defendants and each of them, as herein alleged, Plaintiff has incurred, and will incur, further medical and incidental expenses for the care and treatment of the injuries, the exact amount of which will be determined at the time of trial.

136.  The acts of all of the Defendants and each of them as herein alleged, were willful, wanton, malicious, oppressive and done with reckless disregard of Plaintiff's civil and housing rights and these ongoing unlawful acts and conduct justify the awarding of declaratory and injunctive relief, and statutory damages and other remedies, of up to three times his actual damages and attorneys' fees and costs in favor of Plaintiff against the Defendants in this action pursuant to §§ 51 and 52.1(f) of the Unruh Civil Rights Act.

### SIXTH CAUSE OF ACTION BY PLAINTIFF FOR RETALIATION IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, 42 U.S.C 3617, AS AMENDED, AND CALIFORNIA GOVERNMENT CODE § 12955(g), ON ACCOUNT OF PLAINTIFF'S DISABILITY AGAINST DEFENDANTS

137.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as part of this CAUSE OF ACTION.

138.  Defendants, by and through agents, coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of their having exercised or enjoyed, any right granted by the federal Fair Housing Act, 42 U.S.C. §§ 3601, et seq., and California Government Code § 12955, et seq., in violation of 42 U.S.C. §§ 3617 and California Government Code § 12955(g).

30

139    Defendants have caused and continue to severely injure Plaintiff by imposing differential terms, treatment, privileges, and conditions associated with Plaintiff's requests for reasonable accommodation in the rental of dwelling in public housing in the City of Los Angeles because of Plaintiff's disability, and establishing and enforcing rules or regulations that discriminate on the basis of disability in violation of 42 U.S.C. §§ 3601, et seq., and California Government Code §12955, et seq.

140.    Pursuant to 42 U.S.C. § 3613(c)(1) and (2), and California Government Code §12965, et seq., Defendants are liable to Plaintiff for compensatory damages, injunctive relief, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION BY PLAINTIFF FOR NEGLIGENCE AGAINST DEFENDANTS

141.    Plaintiff incorporates by reference each and every allegations contained in the preceding paragraphs as part of this CAUSE OF ACTION.

142.    Defendants owed Plaintiff a non-delegable duty to operate public housing in the City of Los Angeles, in a manner that was free from unlawful discrimination, and to employ, hire, train, supervise and discipline their employees and themselves to fulfil that duty. Defendants negligently violated that duty by engaging in a pattern and practice of discrimination on the basis of Plaintiff's disability as fully set forth herein.

143.    Defendants' violation of that duty was the result of negligence, including but not limited to: a. Defendants' negligent failure to hire employees and agents who were and are familiar with the requirements and compliance with pertinent provisions of federal and California disabilities and fair housing laws; b. Defendants' negligent failure to train their employees, agents and themselves regarding compliance with the requirements of federal and California disabilities and fair housing laws; c. Defendants' failure to supervise their employees, agents, and themselves regarding compliance with the

31

requirements of federal and California disabilities and fair housing laws; d. Defendants' negligent failure to discipline or terminate employees and agents who failed to comply with the requirements of federal and California disabilities and fair housing laws; and e. Defendants' negligent failure to operate the Subject Property in conformity with accepted industry custom and standards.

144.   As a direct, legal and proximate result of Defendants' negligent conduct, Plaintiff has suffered the loss of an important housing opportunity, violation of his civil rights, deprivation of the full use and enjoyment of his rental of a dwelling and approval of his reasonable accommodation requests, and bodily injury, including severe humiliation, physical and emotional distress.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests and demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.   For general damages, in an amount in excess of the threshold for this Court's jurisdiction, according to proof;

2.   Compensatory damages of $1,000 per day since June 1, 2020, Defendant HACLA improperly denied Plaintiff an extra bedroom to house his live-in aide  as a reasonable accommodation;

3.   For special and statutory damages in a sum to be determined at the time of trial herein;

4.   That the Court declares the Defendants' actions complained of herein to be in violation of the applicable laws under which this action has been brought;

32

5.   That Defendants be ordered to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in again by them or any of their agents;

6.   That Defendants, their agents, employees, and successors be preliminarily and permanently enjoined from discriminating on the basis of the activities complained of above;

7.   For all reasonable attorneys' fees incurred by Plaintiff pursuant to law;

8.   For costs of suit incurred by Plaintiff;

9.   For all reasonable fees and costs allowable under appropriate statutes; and,

10.   For such other and further reliefs as the Court deems proper.

Dated: August 05, 2022

Respectfully Submitted,

Neway Mengistu
In Propria Persona

33